32 F.3d 569
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Clarence Douglas CLANTON, Defendant-Appellant
 No. 93-6148.
 United States Court of Appeals, Sixth Circuit.
 Aug. 2, 1994.
 
 Before: KENNEDY, BATCHELDER, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 On July 1, 1993, a jury in the Western District of Kentucky convicted Clarence Douglas Clanton, Appellant, of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 846, and cocaine distribution within one thousand feet of a playground, in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(C), and 860. In sentencing Appellant, the Honorable Edward H. Johnstone, Senior District Judge for the Western District of Kentucky, departed upward from the United States Sentencing Guidelines due to the high purity of the cocaine Appellant distributed.
 
 
 2
 Appellant appeals his conviction for cocaine distribution within one thousand feed of a playground, arguing that the playgrounds within one thousand feet of Appellant's drug transaction were not "open to the public," as the statute requires. See 21 U.S.C. Sec. 860(d). Appellant also appeals the upward departure. We affirm.
 
 I.
 
 3
 From March 14 through March 21, 1992, Appellant visited Fort Campbell, Kentucky, a United States Army base, where Appellant had been stationed before his discharge the previous year for cocaine use. For the duration of his stay, Appellant resided with then-Sergeant Joe Hill and made use of Hill's white Volvo.
 
 
 4
 On March 18, 1992, Appellant and Hill drove the Volvo to Simm's Guest House on Fort Campbell, where Appellant sold 1.6 grams of cocaine to Sergeant Craig A. Singletary. Sergeant Singletary, whom Appellant knew as Greg Johnson, was in fact an undercover member of Fort Campbell's Criminal Investigation Command Drug Suppression Team. Sergeant Smith, an informant, was also present for the transaction. Appellant had introduced himself to Sergeants Singletary and Smith as Doug Hill, brother to Joe Hill.
 
 
 5
 During the transaction, Appellant advised Sergeant Singletary to contact Appellant or his brother Joe through Sergeant Smith in order to schedule the next transaction. Sergeant Singletary later arranged with Hill for the purchase of one ounce of cocaine. The transaction was scheduled to take place on March 20, 1992, at McDaggon Park, across the street from Simm's Guest House. Sergeant Singletary understood that Appellant was to deliver the cocaine at 4:00 p.m.
 
 
 6
 On March 20, 1992, surveillance observed Appellant approach McDaggon Park in a white Volvo at 3:30 p.m., wait a short while, and then leave. At 4:00 p.m., Sergeants Singletary and Smith arrived at McDaggon Park. When Appellant failed to appear with the cocaine, Sergeant Smith phoned Hill, who said that Appellant had left the Park after waiting some time for Sergeants Singletary and Smith. Hill then completed the transaction at McDaggon Park himself and returned to his apartment, accompanied by Sergeants Singletary and Smith.
 
 
 7
 Outside the apartment, the sergeants and Hill encountered Appellant. Sergeant Singletary attempted to bargain with Appellant over the price of future purchases. Appellant responded that Sergeant Singletary could find another source if the price was too high, but reminded the sergeant of the high quality of the cocaine Appellant and Hill delivered.
 
 
 8
 On March 21, 1992, Appellant left Fort Campbell for his home in North Carolina. On March 27, 1992, during the course of another sale of cocaine at Fort Campbell, Hill expressed to Singletary his intention to acquire a large quantity of cocaine, some of which he planned to sell to Appellant.
 
 
 9
 At trial, the government established that two playgrounds were within one thousand feet of Simm's Guest House, the site of the March 18 transaction. One playground sits directly behind the Guest House, and another sits across the street in McDaggon Park. Both are within Fort Campbell.
 
 
 10
 At sentencing, the district court found Appellant responsible only for the 1.6 grams of cocaine he sold to Sergeant Singletary on March 18, 1992. Accordingly, the appropriate guideline range was fifteen to twenty-one months. The court then noted,
 
 
 11
 The purity of the drug indicates to this Court that this defendant was closer to the source and more culpably involved than the usual normal defendant who comes into this court handling 1.6 grams of cocaine.
 
 
 12
 Because of the purity, the district court departed upward to a sentence of twenty-six months.
 
 
 13
 On appeal, Appellant argues that because the general public has limited access to the playgrounds within one thousand feet of Simm's Guest House, those playgrounds were not "open to the public" within the meaning of 21 U.S.C. Sec. 860. Appellant also argues that the high purity of the cocaine he distributed does not warrant an upward departure under the facts and circumstances of this case.
 
 II.
 
 14
 Title 21, Section 860 of the United States Code enhances the sentence for certain violations of federal narcotics laws committed within one thousand feet of a school or playground. Appellant complains that the evidence was insufficient to convict him of distributing cocaine within one thousand feet of a playground because the named playgrounds were not "open to the public" as the statute provides.[1]
 
 
 15
 In reviewing the sufficiency of the evidence, this Court must consider the evidence in the light most favorable to the government and then sustain the conviction if any rational factfinder could conclude, beyond a reasonable doubt, that the defendant committed each element of the crime. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 16
 The government has raised the question of which burden of proof, preponderance of the evidence or beyond a reasonable doubt, applies to the elements of Sec. 860, which is essentially a sentence enhancement statute. It appears from the joint appendix that the district court submitted the elements of Sec. 860 to the jury under a reasonable doubt standard along with the elements of the underlying drug offense. Because we find the government sustained its burden even under the more rigorous standard, we decline to resolve the issue at this time.
 
 
 17
 Fort Campbell is home to 35,000, including soldiers and their dependents, who have unlimited access to the playgrounds in question. Lawrence Thompson, an investigator with the United States Army Criminal Investigation Command at Fort Campbell, testified that members of the general public may enter the base upon statement of a legitimate reason, such as a desire to visit the Fort Campbell museum. Once on the base, members of the general public may freely use the park areas, including McDaggon Park and the playground behind Simm's Guest House. From these facts, a rational trier of fact could conclude, beyond a reasonable doubt, that the playgrounds in issue were open to the public, within the contemplation of the statute. Therefore, Appellant's first assignment of error is overruled.
 
 III.
 
 18
 A three-step analysis frames the determination of whether an upward departure is justifiable. United States v. Joan, 883 F.2d 491 (6th Cir.1989). The first step asks whether the type of circumstances cited as the basis for the departure are sufficiently unusual to support an upward departure. This is a question of law which this Court reviews de novo. Id. at 494. At the second step, we must decide whether those circumstances have an actual basis in fact in this case. We review this determination for clear error. Id. Once the first two steps are satisfied, this Court must measure the degree of the departure according to a reasonableness standard. In doing so, we must give great deference to the trial court. Id. at 496.
 
 
 19
 Application Note 9 to Sec. 2D1.1 of the United States Sentencing Guidelines resolves the first step in the analysis:
 
 
 20
 The purity of the controlled substance ... may be relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution. Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs. As large quantities are normally associated with high purities, this factor is particularly relevant where smaller quantities are involved.
 
 
 21
 U.S.S.G. Sec. 2D1.1, comment. (n. 9). As a matter of law, therefore, an upward departure based on the high purity of cocaine is proper.[2]
 
 
 22
 As to the second step of the analysis, Appellant contends that the facts of his case overcome any inference drawn from the purity of the drug. In other words, Appellant asserts that, while the cocaine he sold was unusually pure, Appellant did not hold a prominent position in the chain of distribution. Specifically, Appellant points out that Hill was the source of the drugs and that Appellant made only one delivery.
 
 
 23
 We cannot say that the district court clearly erred in applying Application Note 9 to Appellant. Whether or not Hill obtained the cocaine, Hill and Appellant shared an apartment and a car and behaved as partners in drug distribution. Appellant was not merely a courier or "mule"; he sold the cocaine. Appellant's departure from Fort Campbell on March 21, even if a withdrawal from criminal activity, need not alter the analysis of his previous participation in the sale of cocaine at the base. Under these circumstances, the conclusion that a factual basis supports the upward departure was not clearly erroneous.
 
 
 24
 Because the district court decision to depart upwardly to reflect the purity of the cocaine sold to Sergeant Singletary on March 18, 1992, passes steps one and two of the analysis, and because Appellant does not contest the reasonableness of the departure, we overrule Appellant's second assignment of error.
 
 IV.
 
 25
 Based on the foregoing, the ruling of the district court is AFFIRMED.
 
 
 
 [1]
 Title 21, Section 860(d) defines a playground as
 ... any outdoor facility (including any parking lot appurtenant thereto) intended for recreation, open to the public, and with any portion thereof containing three or more separate apparatus intended for the recreation of children including, but not limited to, sliding boards, swingsets, and teeterboards.
 
 
 [2]
 A forensic chemist from the Army Crime Laboratory concluded that the cocaine Appellant distributed to Sergeant Singletary was ninety percent pure. Appellant contests neither the purity of the cocaine he sold nor the probative value of that level of purity on the issue of a defendant's culpability. Therefore, we do not confront the issue of whether the purity of the cocaine here involved is sufficiently high to warrant upward departure